**Charlotte Joy GLICK**

**v.**

**BLAIR & CO., INC., et al.**

**Civ. A. No. 71–1887.**

United States District Court,
E. D. Pennsylvania.

Jan. 22, 1975.

Charles M. Golden, Sidkoff, Pincus, Greenberg, Wapner & Golden, Philadelphia, Pa., for plaintiff.

John P. O'Dea, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., Robert L. Pratter, Duane, Morris & Hecksher, Philadelphia, Pa., for defendants.

## MEMORANDUM ORDER

HIGGINBOTHAM, District Judge.

Fortunately, it is rare when the Courts are confronted with petitions such as the instant one filed by a defendant to enter a decree to enforce a settlement agreement. For reasons which hereafter appear, the motion of defendant is granted.

On July 30, 1971, Charlotte Glick filed suit against Blair and Company, Fahnstock and Company and the New York Stock Exchange for a series of alleged fraudulent transactions involving Bertram Lazar, formerly vice-president and registered representative of Blair and Company, and subsequently a registered representative of Fahnstock and Company. In addition to common law fraud violations, she alleged violations of the Federal Securities Act of 1933 and the Federal Securities Act of 1934. Subsequently, sixteen additional civil action cases were filed by other claimants (usually by counsel other than plaintiff's lawyer) against Blair, Fahnstock and the New York Stock Exchange. These seventeen cases were consolidated on my list for purposes of discovery and trial. After extensive pretrial discovery, there were a series of protracted pretrial and settlement conferences before Magistrate Richard Powers and the undersigned. Finally, on the week when the case was scheduled for trial, all of the plaintiffs' counsel agreed to settle all of the cases by claimants. The percentage of settlement was approximately 39% to 40% of the gross amount invested (with Lazar), with deductions from settlement figures for interest which the parties had received from Lazar. The case was particularly complex and had many uncertainties. There was the underlying issue as to whether certain insurance policies which had been issued to Blair would cover the claims made by some of the plaintiffs; Blair had become insolvent and was under a corporate reorganization as a result of which a federal judge in New York had stayed certain litigation. Even if plaintiffs got a verdict, there was a serious question as to whether it would be against Blair alone or against Fahnstock alone; in some cases there was the high probability that some plaintiffs might be precluded from getting any judgment against either Blair or Fahn-

stock because arguably they were under adequate notice that the "investments" with Lazar were a lark of his own and were not acts which had been authorized by Blair and/or Fahnstock. Liability against the New York Stock Exchange was in my view most tenuous and a directed verdict would probably have to be granted in favor of the New York Stock Exchange. With all of these variables it was agreed by all of the lawyers that the case would be settled on the aforementioned formula. It was agreed that the issue as to what amounts each respective defendant would contribute to the lump sum settlement would be left to the defendants to work out among themselves, as long as plaintiffs were guaranteed specific amounts on each claim.

I required all of the parties to consult with their clients and to exchange specific letters of agreement of settlement noting the specific amounts which had been agreed upon. For the nine civil actions which plaintiffs' counsel had, on November 12th he filed the following letter:

"November 12, 1973     .

Robert L. Pratter, Esquire
1600 Land Title Building
Philadelphia, Pennsylvania  19110

John P. O'Dea, Esquire
1300 Two Girard Plaza
Philadelphia, Pennsylvania  19102

Re:  Glick et al vs. Blair et al

Gentlemen:

Pursuant to the disposition of the above cases arrived at during settlement conferences in the chambers of the Honorable A. Leon Higginbotham, wherein the sum of $19,998.00 was agreed upon to be divided amongst the following Plaintiffs, Glick, Cramer, Brown, Rooklin, Singer, Rachlin, Kaplan, Levin and Schreibman, according to the net amounts claimed by each above Plaintiff, and the sum of $3,426.00 to be paid to Plaintiff Joseph Dash, there appears below the amounts which should be paid to each individual Plaintiff. Please make all checks or drafts payable to the individual and the firm of Sidkoff, Pincus, Greenberg & Golden.

1.   Charlotte Glick, #71–1887, $1,710.00.
2.   Manual G. Cramer, #72–2132, $1,634.00.
3.   Sidney H. Brown, #72–2130, $1,710.00.
4.   Stanley Rooklin and Leah Rooklin, #72–2133, $2,337.00.
5.   Morris Singer, #73–2, $1,900.00.
6.   Herbert S. Rachlin, #72–2131, $5,089.00.
7.   Morris and Albert Kaplan, #72–2134, $2,204.00.
8.   Samuel Schreibman, #72–2404, $1,694.00.
9.   Sylvia Levin, #72–645, $1,710.00.

| | |
|---|---|
| Sub-total | $19,988.00 |
| Joseph Dash | 3,426.00 |
| | $23,414.00 |

Please inform me as to when I can expect payment on these cases.

Very truly yours,

/s/ Gary Green
GARY GREEN
GG:HA"

(EXHIBIT A, DOC. #80)

When all of the lawyers on all of the cases had advised the Court, as well as the defendants' lawyers, that their clients had agreed to settle for the amounts noted as in the prior correspondence, and when the defendants had agreed to pay that amount, the case was marked settled.

Of all the claimants, Mrs. Glick is the only one who refused to sign the releases. On the basis of defendants' Petition (Doc. #80), and in accordance with the rationale of Green v. John H. Lewis & Company, 436 F.2d 389 (3d Cir. 1971), and Kelly v. Greer, 365 F.2d 669 (3d Cir. 1966), I felt that the settlement agreement pursuant to Mr. Green's letter of November 12 was enforceable and defendants were entitled to an order to enforce the settlement agreement.

Since Mrs. Glick was then representing herself (and phoning my office with some frequency), I scheduled a hearing on June 21, 1974, so that she would have the opportunity to express her views. On the basis of the hearing and the other documents of record I find:

(1) Mrs. Glick agreed to settle her entire claim in the amount of $1,710.00 and that when Mr. Green wrote his letter of November 12, 1973, he had authorization from her to settle the entire case.

(2) Although Mrs. Glick had agreed to settle the case as noted above, she was not aware of the fact that among the defendants the New York Stock Exchange was not making any financial contributions to the settlement.

(3) In her letter of March 20, 1974, she has said

" . . . c. I cannot understand how the New York Exchange will not take some responsibility for its members, who have been put in a fraudulent position. If this is the attitude of the New York Exchange, then who or what are they? Where does the small investor turn for protection? Also if they felt no legal responsibility why were they present at my interrogatories taking an active role? I implore the Court to listen to my plea: settlements are a form of appeasements I do not wish to be appeased, I humbly request Justice. Thank you. Respectfully yours, Charlotte Glick . . . P.S. I never at any time agreed to a settlement and *I object to the settlement.*" (Document 81)

(4) Despite her assertion, I find that she did in fact agree to a settlement of the entire claim for the amount of $1,710.-00, but she was not aware as to whether the New York Stock Exchange was contributing to the gross sum of settlement. Further, if she had been aware of the fact that the New York Stock Exchange was not contributing anything to this settlement, then she would not have agreed to settle for the sum of $1,710.00.

It is not the defendants' fault that she was unaware of the fact that the New York Stock Exchange was making no financial contribution, and defendants should not be precluded from enforcing the settlement agreement as agreed upon pursuant to the November 12, 1973 letter of Mrs. Glick's attorney.

The motion for a decree to enforce the settlement agreement is granted.